Leo Fox, Esq.
630 Third Avenue - 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:                                                              Case No.:      22-10351 (LGB)
                                                                    Chapter 11
212 EAST 72ND STREET LLC,

                                          Debtor.
-------------------------------------------------------------X

## DEBTOR'S OPPOSITION TO MOTION TO LIFT STAY

The above Debtor for its opposition to the Motion to Lift Stay ("Motion") of 72nd Ninth

LLC (the "Movant/Secured Creditor") respectfully represents.

## BACKGROUND

1.      The background regarding the ownership of the Debtor's real property located at

212 East 72nd Street, New York, New York (the "Real Property") is set forth in the Declaration of

Marina Koustis attached hereto going back many years.  During the course of the transactions, it

appeared that Doral Bank went out of business and ultimately through a series of assignments this

mortgage and the mortgage of an affiliate ended up in the hands of the Secured Creditor an affiliate

of Madison Realty Capital LLC ("Madison Realty").  It appeared that a single loan was actually

given not exceeding $6,000,000 to the principal obligor. which is not the Debtor, but that a total

of in excess of $8,000,000 in Promissory Notes were executed.

2.      The Secured Creditor proceeded to foreclose on the principal obligor's property in

connection with its mortgage for a credit bid price of $4,900,000 in March 2021.  The Debtor

contends the value of such property was $12,000,000.  After the foreclosure of the principal

obligor's property, Madison Realty continued the foreclosure on the Debtor's Real Property

contending that the loan balance was approximately $10,500,000.

Leo\Clients\212 East 72nd Street LLC\Objection to Motion to Lift Stay V7\6-3-2022

### ASSIGNMENTS

3.    A review of the extensive documentation supporting the Movant's claims reveals that the Movant has failed to present a proper showing of standing to prosecute and enforce its $3,500,000 Promissory Note.  The Carmel Declaration in support of the Motion reveals an Allonge for the $3,500,000 Promissory Note referring to Banco Popular de Puerto, the Assignment of the $3,500,000 mortgage from Banco Popular North America, as Successor refers to "Banco Popular De Puerto Rico", with the handwritten change without who and when the handwritten change was made, a different entity, apparently, than the Successor Interest referred to in all the documents of Banco Popular De Puerto.  The Debtor made several requests to obtain these documents to no avail.  The Carmel Declaration states that all the original documents are maintained.  The Debtor believes there are additional facts relating to the loan documents bearing on the merits of the Movant's Motion and this case.  The Court ordered that the Secured Creditor provide, by June 6, 2022, a day during the week of June 6, 2022, for the inspection of these documents.  The Debtor reserves all of its rights with respect to the documents requested regarding the acquisition and assignment of the loan documents pending receipt of the original documentation.

### CHAPTER 11 FILING

4.    On March 22, 2022 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Title 11, Chapter 11 of the United States Code, 11 U.S.C. §101 *et seq.*, as amended (the "Bankruptcy Code").  No Trustee, Examiner, or Creditors' Committee has been appointed in this case.

5.    On April 21, 2022, the Debtor made a Motion for authority to enter into a six (6) year lease (July 15, 2022 to July 14, 2028) (the "Lease") which would general income of $62,000

("Lease Income") per month with increases.  The Movant opposed the Lease Motion.  The Debtor

has since reduced the period to two (2) years.

6.      On May 4, 2022, the Debtor made a Motion for the use of cash collateral ("Cash

Collateral") from the Lease Income by first paying the monthly operating obligations of $16,000

per month, paying taxing authorities of approximately $14,800 per month against the unpaid

arrears and the Secured Creditor, here, the Movant, approximately $30,000 per month against

unpaid arrears.  The Secured Creditor opposed the Cash Collateral Motion.  Both Motions are

presently scheduled to be heard on June 15, 2022.

## MOTION TO LIFT STAY

7.      On April 13, 2022, not six (6) weeks after the Chapter 11 filing, the Movant made

a Motion to lift the stay.  The Motion contains an extensive and detailed history of the loan

documents, the various Assignments, the fact that the Movant purchased the Note that was in

default at the time and has otherwise vigorously and actively sought to foreclose upon the Debtor's

Real Property.  Indeed, the Movant cites to a number of Stipulations signed by the Debtor.

8.      While the Movant has alleged that the filing of the bankruptcy is a further "delay

which is unjustified (Motion - ¶ 5), the Movant does not claim or allege that the Debtor violated

any prohibitions or restrictions set forth in the pleadings prior to the bankruptcy filing.  Nor does

the Movant explain the precise nature of the delays caused by the Debtor.  There exists vigorous

litigation but no abuse of any process.  No Court award any sanctions were made against the

Debtor.  The Debtor appears to have done nothing more than assert, in good faith, defenses in the

litigation.

9.      The Movant alleges that its claim equals $10,525,565 as of March 23, 2022 (Motion

- ¶ 64) without any analysis or calculation.  Movant has not yet filed a claim.  The judgment dated

3

September 1, 2021 (Motion – Exhibit W) within one (1) year of the Chapter 11 filing reflects a judgment in the agreed upon amount of $9,000,000 plus another $85,000 in additional costs (Motion - ¶ 50 – Exhibit W).  In the event the entry of judgment may not withstand the bankruptcy filing, the capitalized $9,000,000 amount, will be avoided and the Movant's claim will be transformed to a 24% interest on its $3,500,000 loan from February 2015 (the date that Movant alleges a default occurred) up until the Chapter 11 filing.  Nine (9) months (75% of a one (1) year interest accrual - September 1, 2021 until June 1, 2022) equals $607,500 ($810,000 x 75%) for a total of $9,692,500 ($9,000,000 + $85,000 + $607,000), not the $10,525,565 alleged by the Movant.

10.     The above calculation is more in line with the Referee's Report, dated November 7, 2018, filed in the New York State Supreme Court Action (*Exhibit A*).   The Referee's Report reflects that the debt totaled $6,600,067 as of July 18, 2018.   Interest at 24% from July 2018 to July 2022 for four (4) years totals $3,360,000 ($840,000 x 4) for a total of $9,960,067.

11.     In addition, the Tax Lien Trust filed a secured claim in the amount of $817,286 (Claim No. 1).   The Department of Taxation and Finance filed a claim in the amount of $214,840.20 (Claim No. 2) and the New York City Water Board filed a claim in the amount of $31,998.32 (Claim No. 4).   The total of all these amounts representing the secured claims is $11,589,689. The Debtor reserves the right to object to these claims and, indeed, has determined to object to the claims of the Secured Creditor.

In summary:

| | |
|---|---|
| Secured Creditor | $10,525,565 |
| | |
| Tax Lien | $817,286 |
| | |
| New York City Department of Finance | $214,840 |
| | |

| Department of Environmental Protection | $31,998 |
|---|---|
| | |
| Total | $11,589,689 |

12.     The value of the Real Property is greater than this amount.  The Debtor believes it

will obtain an Appraisal that reflects that the subject Real Property present has a value of well in

excess of this amount.  Thus, the Debtor meets the requirements prescribed by §§ 361 and 362 in

establishing the existence of equity, and further the existence of an equity cushion that protects the

junior creditor, mortgagee, here in two (2) ways.  First, assuming the Lease is executed, the

Secured Creditor is being paid "periodic payments" of approximately $30,000 per month plus its

equity cushion increases by approximately $14,800 being paid to the senior creditors, NYCDOF

and the Tax Lien Trusts which serves to reduce the senior debtor on the Real Property and enhance

the Secured Creditor's position by nearly $45,000 per month or approximately $540,000 annually.

The Secured Creditor has not even alleged that the Real Property is diminishing in value or how it

is being adversely affected.  Furthermore, even if there was no equity in the property, the debtor

meets the requirements under § 362(d)(2) in that the property is necessary for an effective

reorganization which the Supreme Court has held requires the debtor to establish a "reasonable

possibility of a successful reorganization within a reasonable time".  See *United Sav. Ass'n v.

Timbers of Inwood Forest Assocs.*, 48 U.S. 365, 376, L. Ed. 2d 740, 108 S. Ct. 626 (1988).

13.     The Movant's Appraisal is flawed in several respects.  First, the Appraisal does not

take into account the valuable air rights which are part of any residential development on this most

pristine of New York City blocks.  Nor does the Appraisal even consider any value based on the

income approach because, according to the Appraiser, its best value is on a sale.  Yet, based upon

the income of the Real Property, the Real Property generates approximately $744,000 annually.

The Appraisal indicates that its opinion of value was not based on the income approach because

the property was not considered as an income producing property (Appraisal – Page 7) when in fact the property is presently generating income. Finally, and admittedly, the Appraiser seriously misgauged the parameters of the Real Property and never inspected the interior.

## THE STAY SHOULD NOT BE LIFTED UNDER § 361(d)(1)

14.    Section 362(d)(1) provides for lifting of the automatic stay "for cause, including the lack of adequate protection of an interest in Real Property of such party in interest." Section 361 describes three forms that adequate protection may take, including periodic cash payments, an additional or replacement lien, or such other relief resulting in the "indubitable equivalent" of the creditor's interest in the Real Property. 11 U.S.C. § 361(1)-(3). The movant bears the burden of "proving its prima facie entitlement to relief under § 362(d)(1). *In re King*, 305 B.R. 152, 174 (Bankr. S.D.N.Y. 2004). See *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 738 (6th Cir. 1994).

15.    The Debtor offered a replacement lien to the Secured Creditor in its Motion for Cash Collateral and continues to support that relief. While the Secured Creditor has opposed the Motion for Cash Collateral, the Debtor stands prepared to continue with that offer. The Debtor has also offered periodic cash payments to the Secured Creditor in its Motion for Cash Collateral in the amount of $30,000 in direct payments to the Secured Creditor assuming the Lease is executed. Furthermore, the Debtor has offered the "indubitable equivalent" by paying down current real estate taxes and past due real estate taxes in excess of $40,000 per month which increases the Secured Creditor's cushion. While the Secured Creditor has objected to the Motion, the Debtor is prepared to make those payments.

## THE STAY SHOULD NOT BE LIFTED UNDER § 362(d)(2)

### A.   THE DEBTOR HAS EQUITY

16.     The creditor has sought relief from stay under § 362(d)(2) which provides that a

court may, in its discretion, grant relief from stay of an action against Real Property if "(A) the

debtor does not have any equity in such Real Property; and (B) such Real Property is not necessary

to an effective reorganization." This statute is worded in the conjunctive; both (A) and (B) have

to be satisfied before relief from stay may be accorded under this subsection. The party opposing

relief from stay has the burden of proof on the debtor's equity in the Real Property. 11 U.S.C. §

362(g). Once the movant shows that the debtor has no equity in the Real Property, the burden

shifts to the debtor to establish that the Real Property is "necessary to an effective reorganization"

and that there is a "a reasonable possibility of a successful reorganization within a reasonable

time." _United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd._, 484 U.S. 365, 376, 108 S. Ct.

626, 98 L. Ed. 2d 740 (1988) (internal quotations and citation omitted). The debtor must show

"not merely that if there is conceivably to be an effective reorganization, this Real Property will

be needed for it; but the Real Property is essential for an effective reorganization that is in

prospect." (emphasis in original).

17.     Section 362(d)(2) only demands an analysis of the debtor's equity in the property,

which involves a calculation of all liens, not only those of the moving creditor. See _Stewart v.

Gurley_, 745 F.2d 1194, 1196 (9th Cir. 1984). Section 362(d)(2) looks to the difference between

the property value and all encumbrances against it while § 362(d)(1) measures property value

against the movant's lien although senior to it _Id_. Even if § 362 (d)(2) is met by the movant, the

Court has discretionary authority to permit it to maintain the stay if the debtor is able to prove

adequate protection of the creditors. See _In re: St. Peter's School_, 16 Bankr. 404, 408 (Bkrtcy.

S.D.N.Y 1982).

18.     There remains in dispute the issue of whether the Debtor has equity in the Real

Property. The disputed value is the subject of competing Appraisals. The amount of the secured

claims has also been put into issue. Thus, the issue of equity, on which the Movant has the burden,

has not been met by the Movant. Even assuming that the Movant can establish that the Debtor

does not have equity, the Movant will fail on the issue of whether the property is necessary for an

affective reorganization and under the *Sonnax* factors.

## B.   THE DEBTOR HAS A CONFIRMABLE PLAN OF REORGANIZATION

19.     The Motion was filed within weeks after the Chapter 11 filing and the Debtor, so

far, has not reached any time period required for a Debtor's Plan to be filed in this case.

Nonetheless, the Debtor expects to receive $62,000 in monthly income and after paying monthly

expenses of approximately $16,000 (inclusive of current real estate taxes of $8,500) leaves the

Debtor with approximately $14,800 payable to the Tax Lien creditors and $30,000 per month

payable to the Secured Creditor here under the proposed Lease that the Debtor has submitted

(*Exhibit B*).

20.     In any Plan, the Debtor may designate classifications of claims for principal and

non-default interest as one class and default interest as a separate class under § 1123 of the

Bankruptcy Code and may extend the time for payment of such claims. See *In re: Crane*

*Automotive, Inc.*, 88 B.R. 81, 19 Coolier Bankr. Cas. 2d (MB) 307 (BC WD Pa. 1988). The

proposed Plan would provide for the New York City Tax Liens and the Tax Lien Trusts as either

a first or second priority classes of approximately $1,100,000 to be paid over a monthly payment

schedule of approximately $14,800 per month to be applied to tax amounts and interest amounts.

The balance of such amounts, after six (6) years, will be paid in a balloon payment as part of the

refinance.

21.    The Mortgagee, Secured Creditor, class claim may be separately classified into the principal amount of the claim and the interest accrued at the contract non-default rate and a separate class of default interest accrual.    The claim at the non-default rate amounts is principal of $3,500,000 plus interest at 6.25% (the non-default rate set forth in the Promissory Note) (Movant's Exhibit A) from February 2015 until August 2022 (seven- and one-half years) equals approximately $1,640,625 or a total of $5,140,625 in total principal and non-default rate interest. The monthly payment amount rate under a 30-year amortization of this amount is $31,651 per month and $26,794 per month under an interest only payment amounts (see Amortization Schedule – *Exhibit C*) which is multiplied by ten (10) to fit within the Amortization Schedule.    This monthly amount is within the range of the proposed payments to derive from the Lease Income.    In addition, at the conclusion of 72 months, the balance due on the $5,140,625 amount would be $4,715,844 as reflected on Exhibit C.    This $4,715,844 amount will be payable as a balloon payment through a refinance on the Real Property in six (6) years at a time that the Debtor believes the value of the Real Property will be significantly greater.    The above schedule is illustrative of the method by which the Secured Creditor's claim will be calculated.

22.    The unsecured creditor class of approximately $3,145,000 shall be paid from a combination of its (a) share (60% of the amount) of the increases in Lease Income, as provided in the Lease, (b) its share (60% of the amount) of the reduction in the current real estate taxes and its share (60% of the amount) of the balance after payment of administrative expenses of the upfront monies of $500,000, in cash, being deposited by the Debtor's principal to maintain and an equity interest in the Debtor, (c) its share (60% of  the amount) of the proceeds of the refinance of the Real Property after six (6) years, after payment of the amounts due to the Secured Creditor and the

taxing authorities and (d) its share (60% of the amount) of any excess of monthly income over expenses which are not utilized to pay the Secured Creditor.

23.     The default interest class is in the approximate amount of $5,384,940 ($10,525,565 - $5,140,625) shall be paid from a combination of its (a) share (40% of the amount) of the increases in Lease Income, as provided in the Lease, (b) its share (40% of the amount) of the reduction in the current real estate taxes and its share (40% of the amount) of the balance after payment of administrative expenses of the upfront monies of $500,000, in cash, being deposited by the Debtor's principal to maintain and an equity interest in the Debtor, (c) its share (40% of the amount) of the proceeds of the refinance of the Real Property after six (6) years after payment of the amounts due to the Secured Creditor and the taxing authorities and (d) its share (40% of the amount) of any excess of monthly income over expenses which are not utilized to pay the Secured Creditor.

24.     This Plan provides all creditors with a much greater distribution both on an aggregate amount as well as on the present value calculated amount than would be the case upon a liquidation.

25.     This method of calculating the default interest component of the claim is justified under the Rules and Law. Default interest constitutes a different type of claim, which is punitive and subject to subordination under certain circumstances and does not hold the priority of a ordinary contract rate interest has with respect to property. Bankruptcy Courts are given latitude in determining rate of post-petition interest to be charged and may deny default interest where it leads to an inequitable result. See *In re: Schwartz*, 726 B.R. 24 (D.N.H. 2009). On a balancing of the equities, the Court may disallow default interest post-petition where the condition is prefaced by § 506 and its costs and expenses are reimbursed. *Id*. The competing equities of the parties are

involved in determining the extent that post-petition interest should be calculated.  See *In re: Laymon*, 958. F.2d 72 (5th Cir. 1952).

26.     The Debtor's principals shall post the sum of $500,000 to be used to pay administrative expenses and the balance to cover the above amounts.  The balance of such amounts, after the administrative expenses, will be paid on a pro rata basis as set forth above.

27.     The Debtor has demonstrated that a Plan such as the one described above is a "reasonable possibility of a successful reorganization within a reasonable time".  The Debtor reserves the right to make modifications in any Plan to be filed in order to meet objections or achieve settlements.

### C. THE PLAN IS FEASIBLE

28.     The Debtor has established that it not only has a Plan but that the Plan is feasible. The test is one of feasibility which should await confirmation and not be reviewed even before a Plan has been filed.  For purposes of a lift stay, the debtor need not show that the plan is actually confirmable.  *In re East-West Assocs.*, 106 B.R. 767, 774 (S.D.N.Y. 1989), but that "the things which are to be done after confirmation can be done as a practical matter."  *In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 172 (S.D.N.Y. 1989) (Walker, J) (quoting *In re Fenske*, 96 B.R. 244 (Bankr. D.N.D. 1988)).  "A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that were there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable."  *In re White Plains Dev. Corp.*, 140 B.R. 948, 950 (Bankr. S.D.N.Y. 1992) (citation omitted).

29.     In *In re 160 Bleeker Street Assocs.*, 156 B.R. 405, 410-11 (S.D.N.Y. 1993), the Court stated "the court should not be left to speculate about important elements and key issues relating to the likelihood of an effective reorganization…. The Debtors' hopes and aspirations for

reorganization, although well-intended, have not been supplemented by any showing that a reorganization is possible, let alone reasonably likely within a reasonable period of time." *In re Diplomat Electronics Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988).

30.    Thus, each day that the Debtor has a Tenant, creditors are being paid on an ongoing basis, while reserving their rights with respect to the Real Property that is still owned by the Debtor and subject to the creditor's claims.

### THE DEBTOR HAS SUBMITTED FACTS AND DEMONSTRATED GOOD FAITH SUFFICIENT TO DEFEAT A MOTION TO DISMISS

31.    Section 1112(b) provides an "illustrative, not exhaustive" list of ten factors to dismiss a bankruptcy case for "cause". *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1131 (2d Cir. 1997). It is settled in this circuit that "[c]ause for dismissal may be found based on unenumerated factors, including 'bad faith'". *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003) (citing *C-TC*, 113 F.3d at 1310).

32.    Further, "the burden is on the movant to prove bad faith and dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *Century/ML Cable Venture*, 294 B.R. at 34 (citing cases).

33.    Prior to *C-TC*, the bankruptcy court in *HBA East* wrote that the dismissal standard was an objective one, "rather than a question of the subjective intention of the petitioners." *HBA East*, 87 B.R. at 261-62. The court acknowledged that, while good faith determinations were "subject to judicial discretion under the circumstances of each case," it would not reject those cases that had assessed subjective factor; it emphasized that courts should not "give undue reliance to the subjective intent of Chapter 11 petitioners." *Id.* at 262. Following the Second Circuit's lead in *C-TC*, the Court should consider both objective and subjective factors in determining whether the Debtor's petition was filed in bad faith.

34.     Thus, in evaluating the _C-TC_ factors, the Court will not "engage in a mechanical counting exercise" to determine whether the Debtor filed in bad faith. _Century/ML Cable Venture_, 294 B.R. at 36.  Furthermore, the Court does not consider these factors in a vacuum, but rather in the context of the totality of the circumstances. _In re FMO Assocs. II, LLC_, 402 B.R. 546, 2009 WL 367540 (Bankr. E.D.N.Y. Feb. 13, 2009).  Accord _Baker v. Latham Sparrowbush Assocs._ (_In re Cohoes Industrial Terminal, Inc._), 931 F.2d 22, 227 (2d Cir. 1991) (the court must consider totality of circumstances to determine if there is substantial evidence to indicate that the debtor made a bad faith filing).

35.     A bankruptcy reorganization case can be dismissed as a bad faith filing which is a judge made doctrine if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it will eventually emerge from bankruptcy proceedings. See _In re MF Global Holdings_, 2013 Bankr. LEXIS 5776 (S.D.N.Y. 2013).

36.     Furthermore, both the Bankruptcy Court's decisions to lift the automatic stay or to grant a motion to dismiss the case is reviewable only for abuse of discretion.  See _In re Nattel_, 2007 U.S. LEXIS 39280 (Dist. Ct. Conn. 2007).  A factual determination on an issue of bad faith is reviewed under the clearly erroneous standard.

37.     The facts here establish subjectively and objectively the intent and the efforts used by the Debtor to move forward on its development project and to attempt to pay off the Secured Creditor's loans to point of completing one building and continuing in a plan to build the second. The Debtor was left with no option or choice but to file a Chapter 11 case to avoid the UCC Foreclosure of not only the Debtor's assets but the rights of the creditors of the subsidiary, Hello Nostrand, owning valuable real estate and thereby harm the investors and the creditors.  The

13

Secured Creditor contends it is owed approximately $58,000,000 against the subsidiary, Hello

Nostrand (Motion - ¶ 2) and seeks to charge $1,200,000 per year in interest and other charges. *Id*.

The Secured Creditor concedes that the Plan is a 100% Plan which is feasible and practical and

can be confirmed in short order (Motion - ¶ 53) although the Secured Creditor makes unfounded

allegations that the Plan is not a viable Plan because the Secured Creditor does not get to won the

building and property and cause the creditors great harm (Motion - ¶¶ 51-55).

### D.  <u>THE DEBTOR MEETS THE REQUIREMENTS OF SONNAX</u>

38.    The Debtor meets the requirements for this Court to deny the lift stay upon an

examination of the factors set out the Court in *In re: Sonnax Industries Inc.*, 907 F.2d 1280, 1286

(2nd Cir. 1990).  Briefly,

(1)    Granting the relief would resolve the issue of the disposition of the real estate but would not resolve issues concerning potential liability of the Guarantor-Individuals which include the principal of the Debtor, and the resolution of any other creditors receiving any funds at all.

(2)    For these reasons, there is a significant connection with the bankruptcy case which will clearly interfere in an orderly disposition of the assets.

(3)    The other proceeding, i.e., a Foreclosure Court, does not involve the Debtor as a fiduciary which the Debtor is here in its capacity as protecting the interests of other creditors and its principals.

(4)    A Foreclosure Court may be a specialized tribunal although it is simply a New York State Supreme Court that has no extra specialized expertise and certainly is not better qualified to handle a sale such as a bankruptcy sale in this Court if that ever became necessary.

(5)    The Debtor's Insurer has no relevance here.

(6)    The foreclosure action does not involve third parties except to extinguish the rights of third-party creditors.

(7)    The Foreclosure Sale in the New York State Supreme would seriously prejudice the interests of the creditors by providing for a sale which does not have a chance of achieving fair market value of the Debtor's property.

14

(8)     The claims held by the creditor-mortgagee here may be subject to disallowance or subordination based on the statements made by the creditor itself in this motion on the issues of fraudulent transfer.

(9)     The lifting of the stay on this mortgage foreclosure judgment would result in a sale of the property and a cancellation of the Debtor's interest and could not result in a judicial lien.

(10)    Interest of judicial economy and economic resolution should result in this Court retaining the disposition of this matter and the allocation of the distribution of assets.

(11)    There would be no trial in the foreclosure action except there would be a foreclosure judgment sale.

(12)    There will be no prejudice based on the existence of the stay where secured creditors are being paid monthly payments, there exists substantial equity and the balance of the harms clearly weigh in favor of this Court retaining the entire case and the Real Property within its jurisdiction.

39.     It is clear that this Court can and should find that the Motion to lift stay should be denied under an examination under the *Sonnax* factors.

**WHEREFORE** it is respectfully request that the Court deny the Motion to Lift Stay and grant such other and further relief as is proper.

Dated: New York, New York
        June 3, 2022

                                        *212 EAST 72ND STREET LLC*
                                        *Debtor*

                            By:     /s/ Leo Fox
                                    Leo Fox, Esq.
                                    *Attorney for the Debtor*
                                    630 Third Avenue – 18th Floor
                                    New York, New York 10017
                                    (212) 867-9595
                                    leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE:                                                          Chapter 11

212 EAST 72ND STREET LLC,                                       Case No.:      22-10351 (LGB)

                                    Debtor.
-----------------------------------------------------------X

## DECLARATION OF MARINA KOUSTIS

***MARINA KOUSTIS*** duly declares under penalty of perjury.

1.      I am the daughter of Evanthia Koustis, the owner of the above Debtor, and familiar
with the matters set forth herein.

2.      I make this Declaration in opposition to the Motion (the "Motion") of 72 Ninth
LLC (the "Secured Creditor") to lift the bankruptcy stay to foreclose upon the Debtor's property
located at 212 East 72nd Street, New York, New York 10021 (the "Real Property").

3.      In 1974, my father passed away in Ohio where we then resided.    In about 1980,
we moved to New York to be near our grandparents and other family members.    My mother
purchased the Real Property in 1992 for $2,000,000 in her own name where we all resided.    The
Real Property is a one-family townhouse.

4.      In or about 1995, I and my sister purchased property located at 753 Ninth Avenue,
New York, New York (the "753 Property") a 12-unit residential and one (1) commercial space
building generating gross income of approximately $28,000.    My mother had no interest or other
obligations with respect to the loan.

5.      In 2010, we needed to renovate the 753 Property and we borrowed funds from RCG
Longview ("RCG").    The loan became due in or about 2014.

6.      In 2014, our mortgage broker, Sam Suzuki, convinced us to borrow the replacement loan for RCG from Doral Bank ("Doral Bank"), a bank owned by an institution in Puerto Rico. Mr. Suzuki indicated that this was a good loan at 6.25% interest and that we should proceed with the loan.    Doral Bank also placed a mortgage on the Real Property.    My mother did not receive any funds or any other consideration for agreeing to the granting of the mortgage.

7.      On the morning of the loan closing, we learned for the first time that the requirements for this loan included forming an LLC, the Debtor here, transferring the Real Property to the Debtor entity and hiring Mr. Suzuki to manage the 753 Property at $5,8000 per month (a task that we had undertaken on our own previously).

8.      In any event, we borrowed the funds to pay off RCG.    We borrowed no more than $6,000,000, which included one (1) year interest reserves.    We cannot explain how the loans were separated into two (2) loans of $3,500,000 for the Debtor and $4,600,000 for the 753 Property. However, Mr. Suzuki continued to collect $6,000 per month, on a first priority basis, and neglected to pay the mortgage owed to Doral Bank.    The parties fell into default.

9.      We understood that the loans included deposits of interest reserve and tax reserve to allow us to proceed for one (1) year from February 2014 to February 2015 without making any payments at all.    However, the Motion alleges that we failed to pay December 2014 interest as well as July 2014 taxes.

10.      In early February 2012, we were advised that the mortgage had been assigned to Banco Popular ("Banco Popular") and we continued to make mortgage payments for at least four (4) to five (5) months.    The Receiver's Report (Opposition – Exhibit ___) gives no credit for these payments.

11.    In May 2015, we were notified that 72nd Ninth LLC acquired the mortgages and were proceeding against us to recover on the loans.

12.    Throughout this time period, we attempted to refinance and searched the financial market to find a lender who was willing to refinance the Real Property.   We were able to locate CV Bank who was willing to refinance both loans but COVID intervened and prevented this from happening.

13.    We commenced a litigation against Mr. Suzuki and obtained a judgment with a subsequent hearing to be held on the amount of damages suffered by the Debtor and my mother. His company went bankrupt.

14.    During the past several years, we were advised we had no choice but to sign the various Forbearance Agreements put before us.   We filed a Voluntary Petition on behalf of 753 Ninth Avenue in an effort to try to resolve the matter.   We were of the understanding that the value of the Real Property was in the range of $12,000,000 to $13,000,000.   Instead, the Secured Creditor credit bid the Real Property for $4,900,000, an amount which is less than $7,000,000 that was the least amount of value for the Real Property.

15.    I and my mother believe that the value of the Real Property is $13,000,000, based upon our knowledge of the market and sales of comparable properties.   We also located the Tenant, Mr. Elliot, who is prepared to pay $62,000 per month in rent.   We believe that rent to be a fair market amount.

16.    It is our wish to reorganize and retain the Real Property for financial and sentimental reasons.   We moved out of the Real Property in order to be able to rent it out and to save the Real Property.   We have also offered to pay $500,000 to fund a Chapter 11 Plan to preserve the Real Property.

17.    For these reasons, we respectfully request that the Court deny the Motion to lift the stay and permit us to proceed with our Chapter 11 Plan or any variation which may be the subject of a settlement discussion with the secured creditors.

Duly declared under penalty
of perjury this 3rd day of June 2022

_Marina Koustis_
Marina Koustis

4

*EXHIBIT A*

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM
NYSCEF DOC. NO. 183

INDEX NO. 850009/2016
RECEIVED NYSCEF: 11/12/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------x

72nd NINTH LLC,

                                        Plaintiff,                          Index No. 850009/2016

            -against-

753 NINTH AVE REALTY LLC, 212 EAST 72nd
STREET LLC, EVANTHIA KOUSTIS, MARINA          **OATH**
KOUSTIS, SOFIA KOUSTIS, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
THE CITY OF NEW YORK ENVIRONMENTAL
CONTROL BOARD, PARAGON OIL BURNER
SERVICE   &   REPAIR   COMPANY,   INC.,
DUOCOLONY FUEL CORP., CRIMINAL COURT
OF THE CITY OF NEW YORK, ADMIRAL
ENERGY CORP. and ATLAS SOCIAL CLUB,

                                        Defendants.

----------------------------------------------------------------x

        I, Jeffrey R. Miller, Esq., the Referee appointed by an order of this Court, made and

entered in the above-entitled action on November 27, 2017, and bearing the date November 17,

2017, to ascertain and compute the amount due to the Plaintiff for principal and interest and

otherwise upon the Notes and Mortgages upon which this action was brought, and to examine

and report whether the mortgaged premises can be sold in individual parcels, do solemnly swear

that I will faithfully and fairly determine the questions so referred to me, and make a just and

true report thereon according to the best of my understanding and as the said order requires.

                                                        _____
                                                        Jeffrey R. Miller, Esq., as Referee

Sworn to before me this
7 day of November        2018

_____
Notary Public

EVAN MIZRAHI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MI6325621
Qualified in Kings County
Commission Expires June 1, 20

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM    INDEX NO. 850009/2016
NYSCEF DOC. NO. 183                                                        RECEIVED NYSCEF: 11/12/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
72nd NINTH LLC,                                                          Index No. 850009/2016

                                        Plaintiff,

           -against-

753 NINTH AVE REALTY LLC, 212 EAST 72nd          **REFEREE'S REPORT OF**
STREET LLC, EVANTHIA KOUSTIS, MARINA             **AMOUNT DUE**
KOUSTIS, SOFIA KOUSTIS, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
THE CITY OF NEW YORK ENVIRONMENTAL
CONTROL BOARD, PARAGON OIL BURNER
SERVICE     &     REPAIR     COMPANY,     INC.,
DUOCOLONY FUEL CORP., CRIMINAL COURT OF
THE CITY OF NEW YORK, ADMIRAL ENERGY
CORP. and ATLAS SOCIAL CLUB,

                                        Defendants.
-----------------------------------------------------------------x

TO THE SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

           In pursuance of an order of this Court, made and entered in the above-entitled action on

November 27, 2017 and dated November 17, 2017, whereby it was referred to the undersigned as

Referee to ascertain and compute the amount due to the Plaintiff for principal and interest and

otherwise upon and by virtue of the Notes and Mortgages upon which this action was brought,

and also to examine and report whether in his/her opinion the mortgaged premises can be sold in

individual parcels.

           I, Jeffrey R. Miller, Esq., the Referee in the said order named,

           DO REPORT that before the proceeding to hear the testimony I was first duly sworn

faithfully and fairly to determine the questions referred to me, and to make a just and true report

thereon, according to the best of my understanding; that on the 10th day of October, 2018, Ariel

Fins, a Vice President of 72nd NINTH LLC ("Plaintiff"), the Plaintiff herein, submitted

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM    INDEX NO. 850009/2016

NYSCEF DOC. NO. 183    RECEIVED NYSCEF: 11/12/2018

testimony in the form of an affidavit submitted herewith, sworn to on the 10th day of October, 2018, that I have computed and ascertained the amount due to the Plaintiff upon and by virtue of said Notes and Mortgages and that I find, and accordingly report, that there is due to the Plaintiff for principal and interest on the said Notes and Mortgages, at the date of this my Report, the sum of *FIFTEEN MILLION SIX HUNDRED ONE THOUSAND FOUR HUNDRED EIGHTY SIX AND 50/100 DOLLARS* **($15,601,486.50),** plus interest on the principal, prepayment charge, miscellaneous fees, etc., as set forth in the Referee's Computation Schedule annexed hereto, from July 18, 2018, as provided in the Complaint, exclusive of counsel fees.

Schedule A, hereunto annexed, contains a schedule of the documentary evidence introduced before me, and shows the amount due for principal, prepayment charge, miscellaneous fees, etc., the period of the computation of the interest and its rate.

I have made inquiry as to the advisability of selling the mortgaged premises in parcels and find accordingly that the mortgaged premises should be sold in individual parcels.

Dated: _November 7_, 2018

_____
Jeffrey R. Miller, Esq., as Referee

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM   INDEX NO. 850009/2016
NYSCEF DOC. NO. 183   RECEIVED NYSCEF: 11/12/2018

## STATEMENT OF AMOUNT DUE AND OWING

Case Name:  72nd Ninth LLC v. 753 Ninth Ave Realty LLC, et al.
Index No.:  850009/2016
County:  New York

### I. CONSOLIDATED NOTE: PRINCIPAL AND INTEREST

Unpaid Principal (the "Principal Sum"): **FOUR MILLION FIVE HUNDRED EIGHTY TWO THOUSAND EIGHT HUNDRED NINETY THREE AND 86/100 DOLLARS**   $4,582,893.86

Nominal Interest at   6.25%   per annum from   1-Nov-14   through   10-Dec-14
(   40   days at   $795.64   per day   )
**THIRTY ONE THOUSAND EIGHT HUNDRED TWENTY FIVE AND 60/100 DOLLARS**   $31,825.60

Default Interest at   24.00%   per annum from   11-Dec-14   through   18-Jul-18
(   1316   days at   $3,055.26   per day   )
**FOUR MILLION TWENTY THOUSAND SEVEN HUNDRED TWENTY TWO AND 16/100 DOLLARS**   $4,020,722.16

Late Charges are equal to 5% of the monthly missed payments for Dec. 11, 2014, Jan. 12, 2015 and Feb. 11, 2015:   $2,795.13
**TWO THOUSAND SEVEN HUNDRED NINETY FIVE AND 13/100 DOLLARS**

### TOTAL PRINCIPAL, INTEREST AND LATE CHARGES

| | |
|---|---|
| Outstanding Principal Balance: | $4,582,893.86 |
| Nominal Interest: | $31,825.60 |
| Default Interest: | $4,020,722.16 |
| Late Charges: | $2,795.13 |
| Total Principal, Interest and Late Charges: | $8,638,236.75 |

### PREPAYMENT CHARGE

Prepayment Charge: 2.5% of the Principal Sum.  Pursuant to par. 2 on page 4 of the Note, the "Prepayment Charge shall apply in all other cases of prepayment, whether voluntary or involuntary...or due to Lender's exercise of its acceleration rights..."   $114,572.35

### MISCELLANEOUS FEES

Appraisal Fee:   $1,800.00
Exit Fee: Pursuant to par. 1 on page 2 of the Note.   $138,000.00

### NEGATIVE ESCROW

Negative Escrow Balance:   $20,669.46

| | Principal | Interest on Principal | Late Charges | Prepayment Penalty | Miscellaneous Fees | Negative Escrow |
|---|---|---|---|---|---|---|
| | $4,582,893.86 | $4,052,547.76 | $2,795.13 | $114,572.35 | $139,800.00 | $20,669.46 |
| **TOTAL:** | $8,913,278.56 | *as of July 18, 2018 with a per diem of* | | $3,055.26 | *thereafter.* | |
| *Principal + Interest + Late Charges +Prepayment Penalty + Miscellaneous Fees + Negative Escrow* | | | | | | |

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM       INDEX NO. 850009/2016

NYSCEF DOC. NO. 183                                    RECEIVED NYSCEF: 11/12/2018

## II. SEVERED NOTE B: PRINCIPAL AND INTEREST

Unpaid Principal (the "Principal Sum"): **THREE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS**                                                                   $3,500,000.00

Nominal Interest at   6.25%   per annum from   1-Nov-14   through   10-Dec-14
         (   40   days at   $607.64   per day   )
**TWENTY FOUR THOUSAND THREE HUNDRED FIVE AND 60/100 DOLLARS**       $24,305.60

Default Interest at   24.00%   per annum from   11-Dec-14   through   18-Jul-18
         (   1316   days at   $2,333.33   per day   )
**THREE MILLION SEVENTY THOUSAND SIX HUNDRED SIXTY TWO AND 28/100 DOLLARS**                                                                              $3,070,662.28

Late Charges are equal to 5% of the monthly missed payments for Dec. 11, 2014, Jan. 12, 2015 and Feb. 11, 2015:                                                         $5,099.56
**FIVE THOUSAND NINETY NINE AND 56/100 DOLLARS**

### TOTAL PRINCIPAL, INTEREST AND LATE CHARGES

| | |
|---|---|
| Outstanding Principal Balance: | $3,500,000.00 |
| Nominal Interest: | $24,305.60 |
| Default Interest: | $3,070,662.28 |
| Late Charges: | $5,099.56 |
| Total Principal, Interest and Late Charges: | $6,600,067.44 |

### CREDITS

Escrow Balance:                                                        ($18,359.50)

### MISCELLANEOUS FEES

Appraisal Fee:                                                         $1,500.00
Exit Fee: Pursuant to par. 2 on page 2 of the Note.                   $105,000.00

| | Principal | Interest on Principal | Late Charges | Credits | Miscellaneous Fees | |
|---|---|---|---|---|---|---|
| | $3,500,000.00 | $3,094,967.88 | $5,099.56 | -$18,359.50 | $106,500.00 | |
| **TOTAL:** | $6,688,207.94 | *as of July 18, 2018 with a per diem of* | | $2,333.33 | *thereafter.* | |
| *(Principal + Interest + Late Charges) - Credits + Miscellaneous Fees* | | | | | | |

Total amount due under both loans:          $15,601,486.50

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM   INDEX NO. 850009/2016

NYSCEF DOC. NO. 183                                              RECEIVED NYSCEF: 11/12/2018

## SCHEDULE A

## ABSTRACT OF DOCUMENTARY EVIDENCE

One Consolidated Note ("**Note #1**") made and executed by 753 Ninth Ave Realty LLC, and held by Doral Bank, in the principal sum of FOUR MILLION SIX HUNDRED THOUSAND AND 00/100 DOLLARS ($4,600,000.00) on February 27, 2014, along with a certain allonge evidencing 72nd Ninth LLC, as holder of the Note. **Marked Exhibit A.**

One Consolidation, Extension & Modification Agreement ("**Mortgage #1**") made and executed by 753 Ninth Ave Realty LLC, as collateral security for the payment of the above mentioned Note #1, acknowledged on February 27, 2014 and recorded on March 21, 2014 under CRFN: 2014000099320 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit B.**

One Collateral Mortgage Assignment of Rents and Security ("**Collateral Mortgage #1**"), made and executed by 212 East 72nd Street LLC, as additional collateral security for the payment of the above mentioned Note #1, acknowledged on February 27, 2014 and recorded on March 21, 2014 under CRFN: 2014000099325 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit C.**

One Assignment of Mortgage ("**Assignment #1**") executed by Banco Popular North America as successor in interest of Banco Popular de Puerto, successor in interest of Doral Bank (as "Assignor") to 72nd Ninth LLC (as "Assignee") dated May 14, 2015 and recorded on June 24, 2015 under CRFN: 2015000216697 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit D.**

One Severed Note B ("**Note #2**") made and executed by 212 East 72nd Street LLC, and held by Doral Bank, in the principal sum of THREE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($3,500,000.00) on February 27, 2014, along with a certain allonge evidencing 72nd Ninth LLC, as holder of the Restated Note. **Marked Exhibit E.**

One Severed Mortgage B Assignment of Rents and Security Agreement ("**Mortgage #2**") made and executed by 212 East 72nd Street LLC, as collateral security for the payment of the above mentioned Note #2, acknowledged on February 27, 2014 and recorded on March 21, 2014 under CRFN: 201400099324 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit F.**

One Collateral Mortgage Assignment of Rents and Security ("**Collateral Mortgage #2**"), made and executed by 753 Ninth Ave Realty LLC, as additional collateral security for the payment of the above mentioned Note #2, acknowledged on February 27, 2014 and recorded on March 21, 2014 under CRFN: 2014000099323 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit G.**

One Assignment of Mortgage ("**Assignment #2**") executed by Banco Popular North America as successor in interest of Banco Popular de Puerto, successor in interest of Doral Bank (as "Assignor") to 72nd Ninth LLC (as "Assignee") dated May 14, 2015 and recorded on June 30, 2015 under CRFN: 2015000223159 in the Office of the City Register of the City of New York, New York County. **Marked Exhibit H.**

FILED: NEW YORK COUNTY CLERK 11/12/2018 12:14 PM    INDEX NO. 850009/2016

NYSCEF DOC. NO. 183    RECEIVED NYSCEF: 11/12/2018

One Cross-Default Agreement (the **"Cross Default Agreement"**) dated February 27, 2014, wherein 753 Ninth Ave Realty LLC and 212 East 72nd Street LLC entered into an agreement with Doral Bank to cross-collateralize the loans. **Marked Exhibit I.**

One Testimony Before Referee, sworn to by Ariel Fins, a Vice President of 72nd Ninth LLC, the Plaintiff herein, on the 10th day of October, 2018. **Marked Exhibit J.**

One Stipulation of Amount Due dated September 14, 2018, wherein the parties agreed and consent that the amount of the calculations set forth in the Statement of Amount Due and Owing are correct and accurate. **Marked Exhibit K.**

One Transcript from the July 18, 2018 Referee's Hearing. **Marked Exhibit L.**

# *EXHIBIT B*

## EXHIBIT A

**Income 30 days**

| Income-Receipts | Income |
| --- | --- |
| Net Expected Monthly Receipts Total | $62,000 |

**Monthly Expenses**

| Expenses | Amount |
| --- | --- |
| Con Ed | $1,200 |
| Water & Sewer | $220 |
| Maintenance | $1,500 |
| Insurance | $1,200 |
| Real Estate Taxes (estimated-approximate current, in addition to any agreement to pay pas due taxes) | $8,500 |
| Reorganization Expenses | $3,500 |
| TOTAL | $16,120 |

# *EXHIBIT C*

# Amortization Calculator - Payment Schedule

**Amortization schedule: 360 months to repay $514,062 at 6.25%**

| Payment Number | Payment Amount | Interest Amount | Principal Reduction | Remaining Balance |
|---|---|---|---|---|
| 1 | $3,165.17 | $2,677.41 | $487.76 | $513,574.24 |
| 2 | $3,165.17 | $2,674.87 | $490.30 | $513,083.94 |
| 3 | $3,165.17 | $2,672.31 | $492.86 | $512,591.08 |
| 4 | $3,165.17 | $2,669.75 | $495.42 | $512,095.66 |
| 5 | $3,165.17 | $2,667.16 | $498.00 | $511,597.65 |
| 6 | $3,165.17 | $2,664.57 | $500.60 | $511,097.06 |
| 7 | $3,165.17 | $2,661.96 | $503.20 | $510,593.85 |
| 8 | $3,165.17 | $2,659.34 | $505.83 | $510,088.03 |
| 9 | $3,165.17 | $2,656.71 | $508.46 | $509,579.57 |
| 10 | $3,165.17 | $2,654.06 | $511.11 | $509,068.46 |
| 11 | $3,165.17 | $2,651.40 | $513.77 | $508,554.69 |
| 12 | $3,165.17 | $2,648.72 | $516.45 | $508,038.24 |
| 13 | $3,165.17 | $2,646.03 | $519.14 | $507,519.11 |
| 14 | $3,165.17 | $2,643.33 | $521.84 | $506,997.27 |
| 15 | $3,165.17 | $2,640.61 | $524.56 | $506,472.71 |
| 16 | $3,165.17 | $2,637.88 | $527.29 | $505,945.42 |
| 17 | $3,165.17 | $2,635.13 | $530.04 | $505,415.39 |
| 18 | $3,165.17 | $2,632.37 | $532.80 | $504,882.59 |
| 20 | $3,165.17 | $2,626.81 | $538.36 | $503,808.68 |
| 21 | $3,165.17 | $2,624.00 | $541.16 | $503,267.49 |

Add to Homescreen?   ✓   ✗

| 22 | $3,165.17 | $2,621.18 | $543.98 | $502,723.51 |
| 23 | $3,165.17 | $2,618.35 | $546.82 | $502,176.69 |
| 24 | $3,165.17 | $2,615.50 | $549.66 | $501,627.03 |
| 25 | $3,165.17 | $2,612.64 | $552.53 | $501,074.50 |
| 26 | $3,165.17 | $2,609.76 | $555.41 | $500,519.10 |
| 27 | $3,165.17 | $2,606.87 | $558.30 | $499,960.80 |
| 28 | $3,165.17 | $2,603.96 | $561.21 | $499,399.59 |
| 29 | $3,165.17 | $2,601.04 | $564.13 | $498,835.46 |
| 30 | $3,165.17 | $2,598.10 | $567.07 | $498,268.40 |
| 31 | $3,165.17 | $2,595.15 | $570.02 | $497,698.38 |
| 32 | $3,165.17 | $2,592.18 | $572.99 | $497,125.39 |
| 33 | $3,165.17 | $2,589.19 | $575.97 | $496,549.41 |
| 34 | $3,165.17 | $2,586.19 | $578.97 | $495,970.44 |
| 35 | $3,165.17 | $2,583.18 | $581.99 | $495,388.45 |
| 36 | $3,165.17 | $2,580.15 | $585.02 | $494,803.43 |
| 37 | $3,165.17 | $2,577.10 | $588.07 | $494,215.37 |
| 38 | $3,165.17 | $2,574.04 | $591.13 | $493,624.24 |
| 39 | $3,165.17 | $2,570.96 | $594.21 | $493,030.03 |
| 40 | $3,165.17 | $2,567.86 | $597.30 | $492,432.72 |
| 41 | $3,165.17 | $2,564.75 | $600.41 | $491,832.31 |
| 42 | $3,165.17 | $2,561.63 | $603.54 | $491,228.77 |
| 43 | $3,165.17 | $2,558.48 | $606.68 | $490,622.08 |
| 44 | $3,165.17 | $2,555.32 | $609.84 | $490,012.24 |
| 45 | $3,165.17 | $2,552.15 | $613.02 | $489,399.22 |
| 46 | $3,165.17 | $2,548.95 | $616.21 | $488,783.00 |
| 49 | $3,165.17 | $2,539.28 | $625.89 | $486,915.04 |
| 50 | $3,165.17 | | $629.15 | $486,285.89 |

Add to Homescreen?    √    X

| 51 | $3,165.17 | $2,532.74 | $632.43 | $485,653.46 |
| 52 | $3,165.17 | $2,529.45 | $635.72 | $485,017.73 |
| 53 | $3,165.17 | $2,526.13 | $639.03 | $484,378.70 |
| 54 | $3,165.17 | $2,522.81 | $642.36 | $483,736.34 |
| 55 | $3,165.17 | $2,519.46 | $645.71 | $483,090.63 |
| 56 | $3,165.17 | $2,516.10 | $649.07 | $482,441.56 |
| 57 | $3,165.17 | $2,512.72 | $652.45 | $481,789.11 |
| 58 | $3,165.17 | $2,509.32 | $655.85 | $481,133.26 |
| 59 | $3,165.17 | $2,505.90 | $659.27 | $480,473.99 |
| 60 | $3,165.17 | $2,502.47 | $662.70 | $479,811.29 |
| 61 | $3,165.17 | $2,499.02 | $666.15 | $479,145.14 |
| 62 | $3,165.17 | $2,495.55 | $669.62 | $478,475.52 |
| 63 | $3,165.17 | $2,492.06 | $673.11 | $477,802.41 |
| 64 | $3,165.17 | $2,488.55 | $676.61 | $477,125.80 |
| 65 | $3,165.17 | $2,485.03 | $680.14 | $476,445.66 |
| 66 | $3,165.17 | $2,481.49 | $683.68 | $475,761.98 |
| 67 | $3,165.17 | $2,477.93 | $687.24 | $475,074.74 |
| 68 | $3,165.17 | $2,474.35 | $690.82 | $474,383.92 |
| 69 | $3,165.17 | $2,470.75 | $694.42 | $473,689.50 |
| 70 | $3,165.17 | $2,467.13 | $698.04 | $472,991.46 |
| 71 | $3,165.17 | $2,463.50 | $701.67 | $472,289.79 |
| 72 | $3,165.17 | $2,459.84 | $705.33 | $471,584.47 |
| 73 | $3,165.17 | $2,456.17 | $709.00 | $470,875.47 |
| 74 | $3,165.17 | $2,452.48 | $712.69 | $470,162.78 |
| 75 | $3,165.17 | $2,448.76 | $716.40 | $469,446.37 |
| 78 | $3,165.17 | $2,437.51 | $727.66 | $467,274.69 |
| 79 | $3,165.17 | | $731.45 | $466,543.25 |

| 80 | $3,165.17 | $2,429.91 | $735.26 | $465,807.99 |
| 81 | $3,165.17 | $2,426.08 | $739.08 | $465,068.91 |
| 82 | $3,165.17 | $2,422.23 | $742.93 | $464,325.97 |
| 83 | $3,165.17 | $2,418.36 | $746.80 | $463,579.17 |
| 84 | $3,165.17 | $2,414.47 | $750.69 | $462,828.48 |
| 85 | $3,165.17 | $2,410.56 | $754.60 | $462,073.87 |
| 86 | $3,165.17 | $2,406.63 | $758.53 | $461,315.34 |
| 87 | $3,165.17 | $2,402.68 | $762.48 | $460,552.86 |
| 88 | $3,165.17 | $2,398.71 | $766.46 | $459,786.40 |
| 89 | $3,165.17 | $2,394.72 | $770.45 | $459,015.95 |
| 90 | $3,165.17 | $2,390.71 | $774.46 | $458,241.49 |
| 91 | $3,165.17 | $2,386.67 | $778.49 | $457,463.00 |
| 92 | $3,165.17 | $2,382.62 | $782.55 | $456,680.45 |
| 93 | $3,165.17 | $2,378.54 | $786.62 | $455,893.83 |
| 94 | $3,165.17 | $2,374.45 | $790.72 | $455,103.11 |
| 95 | $3,165.17 | $2,370.33 | $794.84 | $454,308.27 |
| 96 | $3,165.17 | $2,366.19 | $798.98 | $453,509.29 |
| 97 | $3,165.17 | $2,362.03 | $803.14 | $452,706.15 |
| 98 | $3,165.17 | $2,357.84 | $807.32 | $451,898.82 |
| 99 | $3,165.17 | $2,353.64 | $811.53 | $451,087.30 |
| 100 | $3,165.17 | $2,349.41 | $815.76 | $450,271.54 |
| 101 | $3,165.17 | $2,345.16 | $820.00 | $449,451.54 |
| 102 | $3,165.17 | $2,340.89 | $824.27 | $448,627.26 |
| 103 | $3,165.17 | $2,336.60 | $828.57 | $447,798.69 |
| 104 | $3,165.17 | $2,332.28 | $832.88 | $446,965.81 |
| ... | | | | |
| 107 | $3,165.17 | $2,319.20 | $845.96 | $444,441.04 |
| 108 | $3,165.17 | | $850.37 | $443,590.67 |

| | | | | |
|---|---|---|---|---|
| 109 | $3,165.17 | $2,310.37 | $854.80 | $442,735.87 |
| 110 | $3,165.17 | $2,305.92 | $859.25 | $441,876.62 |
| 111 | $3,165.17 | $2,301.44 | $863.73 | $441,012.89 |
| 112 | $3,165.17 | $2,296.94 | $868.23 | $440,144.67 |
| 113 | $3,165.17 | $2,292.42 | $872.75 | $439,271.92 |
| 114 | $3,165.17 | $2,287.87 | $877.29 | $438,394.62 |
| 115 | $3,165.17 | $2,283.31 | $881.86 | $437,512.76 |
| 116 | $3,165.17 | $2,278.71 | $886.46 | $436,626.31 |
| 117 | $3,165.17 | $2,274.10 | $891.07 | $435,735.23 |
| 118 | $3,165.17 | $2,269.45 | $895.71 | $434,839.52 |
| 119 | $3,165.17 | $2,264.79 | $900.38 | $433,939.14 |
| 120 | $3,165.17 | $2,260.10 | $905.07 | $433,034.07 |
| 121 | $3,165.17 | $2,255.39 | $909.78 | $432,124.29 |
| 122 | $3,165.17 | $2,250.65 | $914.52 | $431,209.77 |
| 123 | $3,165.17 | $2,245.88 | $919.28 | $430,290.48 |
| 124 | $3,165.17 | $2,241.10 | $924.07 | $429,366.41 |
| 125 | $3,165.17 | $2,236.28 | $928.88 | $428,437.53 |
| 126 | $3,165.17 | $2,231.45 | $933.72 | $427,503.81 |
| 127 | $3,165.17 | $2,226.58 | $938.59 | $426,565.22 |
| 128 | $3,165.17 | $2,221.69 | $943.47 | $425,621.74 |
| 129 | $3,165.17 | $2,216.78 | $948.39 | $424,673.36 |
| 130 | $3,165.17 | $2,211.84 | $953.33 | $423,720.03 |
| 131 | $3,165.17 | $2,206.88 | $958.29 | $422,761.74 |
| 132 | $3,165.17 | $2,201.88 | $963.28 | $421,798.45 |
| 133 | $3,165.17 | $2,196.87 | $968.30 | $420,830.15 |
| 136 | $3,165.17 | $2,181.66 | $983.51 | $417,894.88 |
| 137 | $3,165.17 | | $988.63 | $416,906.25 |

| | | | | |
|---|---|---|---|---|
| 138 | $3,165.17 | $2,171.39 | $993.78 | $415,912.47 |
| 139 | $3,165.17 | $2,166.21 | $998.96 | $414,913.51 |
| 140 | $3,165.17 | $2,161.01 | $1,004.16 | $413,909.35 |
| 141 | $3,165.17 | $2,155.78 | $1,009.39 | $412,899.96 |
| 142 | $3,165.17 | $2,150.52 | $1,014.65 | $411,885.31 |
| 143 | $3,165.17 | $2,145.24 | $1,019.93 | $410,865.38 |
| 144 | $3,165.17 | $2,139.92 | $1,025.24 | $409,840.14 |
| 145 | $3,165.17 | $2,134.58 | $1,030.58 | $408,809.55 |
| 146 | $3,165.17 | $2,129.22 | $1,035.95 | $407,773.60 |
| 147 | $3,165.17 | $2,123.82 | $1,041.35 | $406,732.25 |
| 148 | $3,165.17 | $2,118.40 | $1,046.77 | $405,685.48 |
| 149 | $3,165.17 | $2,112.95 | $1,052.22 | $404,633.26 |
| 150 | $3,165.17 | $2,107.46 | $1,057.70 | $403,575.56 |
| 151 | $3,165.17 | $2,101.96 | $1,063.21 | $402,512.34 |
| 152 | $3,165.17 | $2,096.42 | $1,068.75 | $401,443.59 |
| 153 | $3,165.17 | $2,090.85 | $1,074.32 | $400,369.28 |
| 154 | $3,165.17 | $2,085.26 | $1,079.91 | $399,289.37 |
| 155 | $3,165.17 | $2,079.63 | $1,085.54 | $398,203.83 |
| 156 | $3,165.17 | $2,073.98 | $1,091.19 | $397,112.64 |
| 157 | $3,165.17 | $2,068.30 | $1,096.87 | $396,015.77 |
| 158 | $3,165.17 | $2,062.58 | $1,102.59 | $394,913.18 |
| 159 | $3,165.17 | $2,056.84 | $1,108.33 | $393,804.85 |
| 160 | $3,165.17 | $2,051.07 | $1,114.10 | $392,690.75 |
| 161 | $3,165.17 | $2,045.26 | $1,119.90 | $391,570.85 |
| 162 | $3,165.17 | $2,039.43 | $1,125.74 | $390,445.11 |
| 165 | $3,165.17 | $2,021.75 | $1,143.42 | $387,032.60 |
| 166 | $3,165.17 | | $1,149.37 | $385,883.23 |

| | | | | |
|---|---|---|---|---|
| 167 | $3,165.17 | $2,009.81 | $1,155.36 | $384,727.87 |
| 168 | $3,165.17 | $2,003.79 | $1,161.38 | $383,566.49 |
| 169 | $3,165.17 | $1,997.74 | $1,167.43 | $382,399.06 |
| 170 | $3,165.17 | $1,991.66 | $1,173.51 | $381,225.56 |
| 171 | $3,165.17 | $1,985.55 | $1,179.62 | $380,045.94 |
| 172 | $3,165.17 | $1,979.41 | $1,185.76 | $378,860.18 |
| 173 | $3,165.17 | $1,973.23 | $1,191.94 | $377,668.24 |
| 174 | $3,165.17 | $1,967.02 | $1,198.15 | $376,470.09 |
| 175 | $3,165.17 | $1,960.78 | $1,204.39 | $375,265.71 |
| 176 | $3,165.17 | $1,954.51 | $1,210.66 | $374,055.05 |
| 177 | $3,165.17 | $1,948.20 | $1,216.96 | $372,838.08 |
| 178 | $3,165.17 | $1,941.87 | $1,223.30 | $371,614.78 |
| 179 | $3,165.17 | $1,935.49 | $1,229.67 | $370,385.10 |
| 180 | $3,165.17 | $1,929.09 | $1,236.08 | $369,149.03 |
| 181 | $3,165.17 | $1,922.65 | $1,242.52 | $367,906.51 |
| 182 | $3,165.17 | $1,916.18 | $1,248.99 | $366,657.52 |
| 183 | $3,165.17 | $1,909.67 | $1,255.49 | $365,402.03 |
| 184 | $3,165.17 | $1,903.14 | $1,262.03 | $364,139.99 |
| 185 | $3,165.17 | $1,896.56 | $1,268.61 | $362,871.39 |
| 186 | $3,165.17 | $1,889.96 | $1,275.21 | $361,596.18 |
| 187 | $3,165.17 | $1,883.31 | $1,281.85 | $360,314.32 |
| 188 | $3,165.17 | $1,876.64 | $1,288.53 | $359,025.79 |
| 189 | $3,165.17 | $1,869.93 | $1,295.24 | $357,730.55 |
| 190 | $3,165.17 | $1,863.18 | $1,301.99 | $356,428.56 |
| 191 | $3,165.17 | $1,856.40 | $1,308.77 | $355,119.79 |
| 194 | $3,165.17 | $1,835.84 | $1,329.33 | $351,152.44 |
| 195 | $3,165.17 | | $1,336.25 | $349,816.19 |

| 196 | $3,165.17 | $1,821.96 | $1,343.21 | $348,472.98 |
|-----|-----------|-----------|-----------|-------------|
| 197 | $3,165.17 | $1,814.96 | $1,350.20 | $347,122.78 |
| 198 | $3,165.17 | $1,807.93 | $1,357.24 | $345,765.54 |
| 199 | $3,165.17 | $1,800.86 | $1,364.31 | $344,401.23 |
| 200 | $3,165.17 | $1,793.76 | $1,371.41 | $343,029.82 |
| 201 | $3,165.17 | $1,786.61 | $1,378.55 | $341,651.27 |
| 202 | $3,165.17 | $1,779.43 | $1,385.73 | $340,265.53 |
| 203 | $3,165.17 | $1,772.22 | $1,392.95 | $338,872.58 |
| 204 | $3,165.17 | $1,764.96 | $1,400.21 | $337,472.37 |
| 205 | $3,165.17 | $1,757.67 | $1,407.50 | $336,064.88 |
| 206 | $3,165.17 | $1,750.34 | $1,414.83 | $334,650.05 |
| 207 | $3,165.17 | $1,742.97 | $1,422.20 | $333,227.85 |
| 208 | $3,165.17 | $1,735.56 | $1,429.61 | $331,798.24 |
| 209 | $3,165.17 | $1,728.12 | $1,437.05 | $330,361.19 |
| 210 | $3,165.17 | $1,720.63 | $1,444.54 | $328,916.65 |
| 211 | $3,165.17 | $1,713.11 | $1,452.06 | $327,464.59 |
| 212 | $3,165.17 | $1,705.54 | $1,459.62 | $326,004.97 |
| 213 | $3,165.17 | $1,697.94 | $1,467.23 | $324,537.74 |
| 214 | $3,165.17 | $1,690.30 | $1,474.87 | $323,062.87 |
| 215 | $3,165.17 | $1,682.62 | $1,482.55 | $321,580.32 |
| 216 | $3,165.17 | $1,674.90 | $1,490.27 | $320,090.05 |
| 217 | $3,165.17 | $1,667.14 | $1,498.03 | $318,592.02 |
| 218 | $3,165.17 | $1,659.33 | $1,505.83 | $317,086.19 |
| 219 | $3,165.17 | $1,651.49 | $1,513.68 | $315,572.51 |
| 220 | $3,165.17 | $1,643.61 | $1,521.56 | $314,050.95 |
| 223 | $3,165.17 | $1,619.71 | $1,545.46 | $309,438.55 |
| 224 | $3,165.17 |           | $1,553.51 | $307,885.04 |

| | | | | |
|---|---|---|---|---|
| 225 | $3,165.17 | $1,603.57 | $1,561.60 | $306,323.44 |
| 226 | $3,165.17 | $1,595.43 | $1,569.73 | $304,753.71 |
| 227 | $3,165.17 | $1,587.26 | $1,577.91 | $303,175.80 |
| 228 | $3,165.17 | $1,579.04 | $1,586.13 | $301,589.67 |
| 229 | $3,165.17 | $1,570.78 | $1,594.39 | $299,995.28 |
| 230 | $3,165.17 | $1,562.48 | $1,602.69 | $298,392.59 |
| 231 | $3,165.17 | $1,554.13 | $1,611.04 | $296,781.55 |
| 232 | $3,165.17 | $1,545.74 | $1,619.43 | $295,162.12 |
| 233 | $3,165.17 | $1,537.30 | $1,627.87 | $293,534.25 |
| 234 | $3,165.17 | $1,528.82 | $1,636.34 | $291,897.91 |
| 235 | $3,165.17 | $1,520.30 | $1,644.87 | $290,253.04 |
| 236 | $3,165.17 | $1,511.73 | $1,653.43 | $288,599.61 |
| 237 | $3,165.17 | $1,503.12 | $1,662.05 | $286,937.56 |
| 238 | $3,165.17 | $1,494.47 | $1,670.70 | $285,266.86 |
| 239 | $3,165.17 | $1,485.76 | $1,679.40 | $283,587.46 |
| 240 | $3,165.17 | $1,477.02 | $1,688.15 | $281,899.31 |
| 241 | $3,165.17 | $1,468.23 | $1,696.94 | $280,202.36 |
| 242 | $3,165.17 | $1,459.39 | $1,705.78 | $278,496.58 |
| 243 | $3,165.17 | $1,450.50 | $1,714.67 | $276,781.92 |
| 244 | $3,165.17 | $1,441.57 | $1,723.60 | $275,058.32 |
| 245 | $3,165.17 | $1,432.60 | $1,732.57 | $273,325.75 |
| 246 | $3,165.17 | $1,423.57 | $1,741.60 | $271,584.15 |
| 247 | $3,165.17 | $1,414.50 | $1,750.67 | $269,833.49 |
| 248 | $3,165.17 | $1,405.38 | $1,759.79 | $268,073.70 |
| 249 | $3,165.17 | $1,396.22 | $1,768.95 | $266,304.75 |
| 252 | $3,165.17 | $1,368.43 | $1,796.74 | $260,942.43 |
| 253 | $3,165.17 | | $1,806.09 | $259,136.33 |

| 254 | $3,165.17 | $1,349.67 | $1,815.50 | $257,320.83 |
| 255 | $3,165.17 | $1,340.21 | $1,824.96 | $255,495.88 |
| 256 | $3,165.17 | $1,330.71 | $1,834.46 | $253,661.42 |
| 257 | $3,165.17 | $1,321.15 | $1,844.01 | $251,817.40 |
| 258 | $3,165.17 | $1,311.55 | $1,853.62 | $249,963.78 |
| 259 | $3,165.17 | $1,301.89 | $1,863.27 | $248,100.51 |
| 260 | $3,165.17 | $1,292.19 | $1,872.98 | $246,227.53 |
| 261 | $3,165.17 | $1,282.44 | $1,882.73 | $244,344.80 |
| 262 | $3,165.17 | $1,272.63 | $1,892.54 | $242,452.26 |
| 263 | $3,165.17 | $1,262.77 | $1,902.40 | $240,549.86 |
| 264 | $3,165.17 | $1,252.86 | $1,912.30 | $238,637.56 |
| 265 | $3,165.17 | $1,242.90 | $1,922.26 | $236,715.29 |
| 266 | $3,165.17 | $1,232.89 | $1,932.28 | $234,783.02 |
| 267 | $3,165.17 | $1,222.83 | $1,942.34 | $232,840.68 |
| 268 | $3,165.17 | $1,212.71 | $1,952.46 | $230,888.22 |
| 269 | $3,165.17 | $1,202.54 | $1,962.63 | $228,925.60 |
| 270 | $3,165.17 | $1,192.32 | $1,972.85 | $226,952.75 |
| 271 | $3,165.17 | $1,182.05 | $1,983.12 | $224,969.63 |
| 272 | $3,165.17 | $1,171.72 | $1,993.45 | $222,976.18 |
| 273 | $3,165.17 | $1,161.33 | $2,003.83 | $220,972.34 |
| 274 | $3,165.17 | $1,150.90 | $2,014.27 | $218,958.07 |
| 275 | $3,165.17 | $1,140.41 | $2,024.76 | $216,933.31 |
| 276 | $3,165.17 | $1,129.86 | $2,035.31 | $214,898.00 |
| 277 | $3,165.17 | $1,119.26 | $2,045.91 | $212,852.09 |
| 278 | $3,165.17 | $1,108.60 | $2,056.56 | $210,795.53 |
| 281 | $3,165.17 | $1,076.30 | $2,088.86 | $204,561.35 |
| 282 | $3,165.17 | | $2,099.74 | $202,461.61 |

| 283 | $3,165.17 | $1,054.49 | $2,110.68 | $200,350.92 |
| 284 | $3,165.17 | $1,043.49 | $2,121.67 | $198,229.25 |
| 285 | $3,165.17 | $1,032.44 | $2,132.72 | $196,096.53 |
| 286 | $3,165.17 | $1,021.34 | $2,143.83 | $193,952.69 |
| 287 | $3,165.17 | $1,010.17 | $2,155.00 | $191,797.70 |
| 288 | $3,165.17 | $998.95 | $2,166.22 | $189,631.48 |
| 289 | $3,165.17 | $987.66 | $2,177.50 | $187,453.97 |
| 290 | $3,165.17 | $976.32 | $2,188.85 | $185,265.13 |
| 291 | $3,165.17 | $964.92 | $2,200.25 | $183,064.88 |
| 292 | $3,165.17 | $953.46 | $2,211.71 | $180,853.17 |
| 293 | $3,165.17 | $941.94 | $2,223.22 | $178,629.95 |
| 294 | $3,165.17 | $930.36 | $2,234.80 | $176,395.15 |
| 295 | $3,165.17 | $918.72 | $2,246.44 | $174,148.70 |
| 296 | $3,165.17 | $907.02 | $2,258.14 | $171,890.56 |
| 297 | $3,165.17 | $895.26 | $2,269.90 | $169,620.65 |
| 298 | $3,165.17 | $883.44 | $2,281.73 | $167,338.93 |
| 299 | $3,165.17 | $871.56 | $2,293.61 | $165,045.32 |
| 300 | $3,165.17 | $859.61 | $2,305.56 | $162,739.76 |
| 301 | $3,165.17 | $847.60 | $2,317.57 | $160,422.19 |
| 302 | $3,165.17 | $835.53 | $2,329.64 | $158,092.56 |
| 303 | $3,165.17 | $823.40 | $2,341.77 | $155,750.79 |
| 304 | $3,165.17 | $811.20 | $2,353.97 | $153,396.82 |
| 305 | $3,165.17 | $798.94 | $2,366.23 | $151,030.60 |
| 306 | $3,165.17 | $786.62 | $2,378.55 | $148,652.05 |
| 307 | $3,165.17 | $774.23 | $2,390.94 | $146,261.11 |
| 310 | $3,165.17 | $736.68 | $2,428.49 | $139,013.31 |
| 311 | $3,165.17 | | $2,441.14 | $136,572.17 |

| 312 | $3,165.17 | $711.31 | $2,453.85 | $134,118.32 |
| 313 | $3,165.17 | $698.53 | $2,466.64 | $131,651.68 |
| 314 | $3,165.17 | $685.69 | $2,479.48 | $129,172.20 |
| 315 | $3,165.17 | $672.77 | $2,492.40 | $126,679.80 |
| 316 | $3,165.17 | $659.79 | $2,505.38 | $124,174.43 |
| 317 | $3,165.17 | $646.74 | $2,518.43 | $121,656.00 |
| 318 | $3,165.17 | $633.63 | $2,531.54 | $119,124.46 |
| 319 | $3,165.17 | $620.44 | $2,544.73 | $116,579.73 |
| 320 | $3,165.17 | $607.19 | $2,557.98 | $114,021.75 |
| 321 | $3,165.17 | $593.86 | $2,571.30 | $111,450.44 |
| 322 | $3,165.17 | $580.47 | $2,584.70 | $108,865.75 |
| 323 | $3,165.17 | $567.01 | $2,598.16 | $106,267.59 |
| 324 | $3,165.17 | $553.48 | $2,611.69 | $103,655.90 |
| 325 | $3,165.17 | $539.87 | $2,625.29 | $101,030.60 |
| 326 | $3,165.17 | $526.20 | $2,638.97 | $98,391.63 |
| 327 | $3,165.17 | $512.46 | $2,652.71 | $95,738.92 |
| 328 | $3,165.17 | $498.64 | $2,666.53 | $93,072.39 |
| 329 | $3,165.17 | $484.75 | $2,680.42 | $90,391.98 |
| 330 | $3,165.17 | $470.79 | $2,694.38 | $87,697.60 |
| 331 | $3,165.17 | $456.76 | $2,708.41 | $84,989.19 |
| 332 | $3,165.17 | $442.65 | $2,722.52 | $82,266.68 |
| 333 | $3,165.17 | $428.47 | $2,736.70 | $79,529.98 |
| 334 | $3,165.17 | $414.22 | $2,750.95 | $76,779.03 |
| 335 | $3,165.17 | $399.89 | $2,765.28 | $74,013.75 |
| 336 | $3,165.17 | $385.49 | $2,779.68 | $71,234.07 |
| 339 | $3,165.17 | $341.83 | $2,823.34 | $62,807.87 |
| 340 | $3,165.17 | | $2,838.04 | $59,969.82 |

| 341 | $3,165.17 | $312.34 | $2,852.83 | $57,117.00 |
| 342 | $3,165.17 | $297.48 | $2,867.68 | $54,249.31 |
| 343 | $3,165.17 | $282.55 | $2,882.62 | $51,366.69 |
| 344 | $3,165.17 | $267.53 | $2,897.63 | $48,469.06 |
| 345 | $3,165.17 | $252.44 | $2,912.73 | $45,556.34 |
| 346 | $3,165.17 | $237.27 | $2,927.90 | $42,628.44 |
| 347 | $3,165.17 | $222.02 | $2,943.15 | $39,685.30 |
| 348 | $3,165.17 | $206.69 | $2,958.47 | $36,726.82 |
| 349 | $3,165.17 | $191.29 | $2,973.88 | $33,752.94 |
| 350 | $3,165.17 | $175.80 | $2,989.37 | $30,763.57 |
| 351 | $3,165.17 | $160.23 | $3,004.94 | $27,758.63 |
| 352 | $3,165.17 | $144.58 | $3,020.59 | $24,738.03 |
| 353 | $3,165.17 | $128.84 | $3,036.32 | $21,701.71 |
| 354 | $3,165.17 | $113.03 | $3,052.14 | $18,649.57 |
| 355 | $3,165.17 | $97.13 | $3,068.03 | $15,581.54 |
| 356 | $3,165.17 | $81.15 | $3,084.01 | $12,497.52 |
| 357 | $3,165.17 | $65.09 | $3,100.08 | $9,397.44 |
| 358 | $3,165.17 | $48.95 | $3,116.22 | $6,281.22 |
| 359 | $3,165.17 | $32.71 | $3,132.45 | $3,148.77 |
| 360 | $3,165.17 | $16.40 | $3,148.77 | $0.00 |